Raymond C. Kilduff, Administrator (Estate of Helen Kilduff) *v.* Amelia Kalinowski

Maltbie, C. J., Brown, Jennings, Dickenson and Baldwin, Js.

Argued January 4—decided February 14, 1950.

*Charles G. Albom,* with whom, on the brief, was *Nelson Harris,* for the appellant (plaintiff).

*Benjamin Slade,* for the appellee (defendant).

JENNINGS, J.   The plaintiff had a verdict for damages in an action for malicious injury which allegedly resulted in personal injuries to his intestate.   The trial court set the verdict aside on the ground that the element of proximate cause was not proven.   The plaintiff appealed from this ruling.   This is the only assignment of error.

The jury reasonably could have found the following facts: Raymond, who is the plaintiff administrator, his brother James and their mother Helen Kilduff lived together in a five-room apartment on the fourth floor of a building on State Street in New Haven owned by the defendant.   Raymond worked every day in Stamford, Helen did most of the housework, and James had only casual employment.   On November 11, 1947, this arrangement had continued for about eleven years.   During that time the defendant had twice brought summary process against the Kilduffs.   Both cases resulted in judgments for the latter.   For six months before the date mentioned, Raymond had been subjected to a torrent of abuse by the defendant whenever he met or had occasion to deal with her and was told to get out of the house.

Helen was eighty and in fairly good health for her age.   She was about five feet tall and weighed ninety-nine pounds.   She had occasional dizzy spells.   When these occurred she would usually lie down and this,

with a drink of water and the application of a wet towel to her head, ordinarily relieved her. The defendant had been informed that Helen suffered from dizzy spells and needed water, and on the night before the accident she had been told that Helen was not well and that water was necessary.

The water in the Kilduff apartment had been shut off twice within the year prior to November, 1947. On both occasions Raymond had been able to restore service by turning the control valve in the defendant's cellar. On Sunday, November 9, 1947, the water was again shut off. Raymond tried to find the defendant but she avoided him. Finally, he had to borrow water from a neighbor. Next morning, he tried to get into the defendant's cellar to turn the valve but the cellar was padlocked. On Monday night Helen had a dizzy spell and was treated by Raymond. On Tuesday Raymond went to work early, as usual. Helen was left alone. She felt one of her dizzy headaches coming on and got up from bed to get water to relieve it but found the water shut off. She did this three or four times and finally sat down in a chair, expecting that the water would soon come; and on getting up from the chair to go again to the water faucet she fell and was injured.

The question whether a negligent or malicious act is a substantial factor in causing an injury has received considerable attention from this court. *Mahoney* v. *Beatman,* 110 Conn. 184, 147 A. 762; *Kinderavich* v. *Palmer,* 127 Conn. 85, 15 A. 2d 83. It is usually a question of fact. *Edgecomb* v. *Great Atlantic & Pacific Tea Co.,* 127 Conn. 488, 492, 18 A. 2d 364. The solution may prove difficult but is generally less so in cases of wilful or malicious injury than in injuries resulting from negligence, although the applicable principle is the same. Green, Rationale of Proximate

Cause, p. 170. This is because the wilful or malicious actor generally intends to inflict injury. When injury follows, the defendant is liable for all of the damage proximately caused, whether foreseen or not. "He [the wrongdoer] went about to do harm, and having begun an act of wrongful mischief, he cannot stop the risk at his pleasure, nor confine it to the precise objects he laid out, but must abide it fully and to the end." Pollock, Torts (14th Ed.), p. 26.

Proximate causation is not determined by the test of results reasonably to be foreseen. *Mahoney* v. *Beatman,* supra, 191; *Corey* v. *Phillips,* 126 Conn. 246, 255, 10 A. 2d 370. As is well stated in *Perkins* v. *Vermont Hydro-Electric Corporation,* 106 Vt. 367, 381, 177 A. 631: "On the question whether there was negligence, it is material to consider the consequences that a prudent man might reasonably have anticipated, but, when negligence is once established, the consideration of the anticipated consequences of the act or omission is wholly immaterial in the determination of the extent of the liability imposed by it. If one is negligent, he is liable for all the injurious consequences that flow from his negligence, until diverted by the intervention of some efficient cause which makes the injury its own, or until the force set in motion by the negligent act or omission has so far spent itself as to be too small for the law's notice."

It is not necessary that injury in the precise form suffered should have been foreseen; it is only essential that, viewing the occurrence in retrospect, the consequences were the proximate result of the wrongful conduct of the defendant. *Hatch* v. *Globe Laundry Co.,* 132 Me. 379, 382, 171 A. 387; see *Mourison* v. *Hansen,* 128 Conn. 62, 65, 20 A. 2d 84; *Guille* v. *Swan,* 19 Johns. (N. Y.) 381; *Newlin* v. *New England Tele-*

*phone & Telegraph Co.,* 316 Mass. 234, 236, 54 N. E. 2d 929.

In view of the knowledge of the defendant of Helen's condition and her need of water, she could have foreseen that injury would probably result if she shut off the water. This supports a finding of either negligence or wilful injury. Helen repeatedly went to the tap for relief and finally succumbed as the direct result of the lack of water. Looking back from the result, the jury reasonably could have found, as they apparently did, that the act of the defendant was a substantial factor in causing the injuries of Helen. *Mahoney* v. *Beatman,* supra; and see *Smirnoff* v. *McNerney,* 112 Conn. 421, 424, 152 A. 399; Restatement, 2 Torts, § 433, comments e, f. The circumstances were not such as to make expert medical testimony essential, as claimed by the defendant. *Sapiente* v. *Waltuck,* 127 Conn. 224, 227, 15 A. 2d 417.

The defendant also claimed the verdict to be so defective in form that it was insufficient to support a judgment. The verdict must contain an intelligible finding so that its meaning is clear. *Brown* v. *Hart,* 91 Conn. 667, 673, 100 A. 1065; *Dwyer* v. *Redmond,* 100 Conn. 393, 397, 124 A. 7; *Walter* v. *Louisville R. Co.,* 150 Ky. 652, 659, 150 S. W. 824. In the case at bar the verdict read: "Plaintiff's Verdict. In this case the jury finds the issues for the plaintiff, and therefore finds for the plaintiff to recover of the defendant Raymond C. Kilduff, Administrator, Twenty Three Hundred dollars damages."

The insertion of the words "Raymond C. Kilduff, Administrator" was made by the jury, as appears from the original verdict in the file. It is too apparent for argument that this was a mistake. The verdict was a plaintiff's verdict; the amount of damages awarded was stated and there was only one party from whom

they could be recovered, the defendant. Its meaning is clear. See *Oneker* v. *Liggett Drug Co.*, 124 Conn. 83, 87, 197 A. 887.

There is error and the case is remanded with direction to enter judgment on the verdict.

In this opinion MALTBIE, C. J., and BALDWIN, J., concurred; BROWN and DICKENSON, Js., dissented.

BROWN, J. (dissenting). Had the plaintiff's intestate fallen and sustained her injury on her way to the faucet the first time, obviously her own act in attempting to get to it in her condition, and not fault of the defendant, would have been the cause of her injury. By her first trip to the faucet she learned that the water was shut off. Notwithstanding, she made the subsequent trips and in attempting the final one fell and was injured. Under these circumstances, as in the first situation suggested, it was not the fault of the defendant, but the intestate's own act in making the attempt in her then condition, which was the proximate cause of her fall and injury. To paraphrase the language of the court in *Perkins* v. *Vermont Hydro-Electric Corporation,* 106 Vt. 367, 381, 177 A. 631, quoted by the majority, the defendant's negligence was diverted by the intervention of the intestate's own act as a conscious agent and this thus became the efficient cause which made the injury its own. It is my conclusion that for this reason the court did not err in setting aside the verdict.