RUFUS P. HATCH *vs.* GLOBE LAUNDRY COMPANY.

Cumberland.     Opinion, March 12, 1934.

*Frank H. Purinton*, for plaintiff.
*Robinson & Richardson*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

THAXTER, J.    In this action the plaintiff seeks to recover for personal injuries caused, as he alleges, by the defendant's negligence. The case was heard by the presiding Justice with a right reserved by both parties to except in matters of law. He found for the plaintiff, and the defendant filed exceptions, which are now before us.

The circumstances of the accident, as set forth by the pleadings and established by the evidence, are peculiar. There is no serious dispute as to what happened. On the twenty-third day of June, 1933, one Small, an employee of the defendant, parked a truck of the defendant on Lincoln Street in Portland, while he went to a house to deliver a package of laundry. The truck, with emergency brake set, was on the left side of the street, headed down hill on quite a grade. The presiding Justice found that the front wheels were turned away from the curb. There is no direct evidence on this point, but a reasonable inference can be drawn from what subsequently happened that the driver did not take the precaution of turning the wheels toward the sidewalk. The truck was electrically operated, of slow speed but powerful. There were no gears, and all that was necessary to do to start it was to move a small wheel, which controlled a rheostat. This wheel, which turned easily, was located on the steering post, and, with the left side of the truck toward the side of the street, was readily accessible to anyone who might step on the running board from the sidewalk. There was a circuit breaker, which consisted of an oblong piece of metal or key inserted in a slot between two contact points. If this were pulled out, power could not pass to the motor, even though the rheostat might be opened. Although it was perfectly simple to remove this key, Small testified that he never did so, except when he left the

car in the garage at night. The truck was low and had no doors. Deering Avenue, an important highway, intersected Lincoln Street a short distance below the point where the truck was stopped, and beyond Deering Avenue was the main thoroughfare of Forest Avenue. Other cars were parked on the sides of the street in front of the truck. As Small entered the house with his laundry, he noticed children playing on the same side of the street, although, as he says, not in the immediate vicinity of the truck. He was in the house about four minutes according to his estimate. Almost immediately, however, two boys four and five years old, who were playing nearby, got into the truck, turned the wheel controlling the rheostat, until the full power from the batteries was thrown into the motor; and, in spite of the fact that the emergency brake remained set, the car started down the hill with the children in it. The plaintiff, who was seated on the porch of a house across the street, seeing their predicament and realizing the danger to them and to other persons lawfully on the highway, dashed out, jumped into the moving truck, and attempted to stop it. Unacquainted with the operation of an electric vehicle, he was unaware that the power was on, but thought that the emergency brake had been released and that the car was coasting down hill. His attempts to put more pressure on the brake were unavailing, and the car continued on its course. The children saved themselves by jumping off. Deering Avenue, with traffic moving across it in front of him, was but a hundred and fifty feet away; and, in order to avoid what seemed to him an inevitable accident to himself and to others, he turned the truck from the street into an open space between two houses. In going over this rough ground, he was thrown off and injured. The truck finally stopped, when it struck a tree.

The plaintiff contends that the defendant's driver was negligent in leaving the truck as he did with the opportunity so readily to start it open to young children, who were near at hand. The defendant claims that the act of the children was an intervening and a proximate cause of the accident, for which the driver of the truck was in no way responsible. The exceptions to specific findings of the presiding Justice all merge into this general question, and the issue before us is whether there is any evidence to support the ruling below. *Chabot & Richard Co.* v. *Chabot*, 109 Me., 403.

The universal rule is that if the defendant is to be held answerable in damages to the plaintiff, the negligence must be the proximate cause of the injury suffered. To lay down a general definition of proximate cause, which will furnish a solvent for all cases, is, however, well nigh impossible. Each case presents its own problem. *Page* v. *Bucksport*, 64 Me., 51; *Fairbanks* v. *Kerr*, 70 Pa., 86. The most usually cited rule is that the injury must be the natural and probable consequence of the negligence. *Marsh* v. *Great Northern Paper Co.*, 101 Me., 489, 502. But even this formula has its limitations and exceptions, as is pointed out by Judge Smith in an article in 25 Harv. L. Rev., 103, 115. As he shows, a wrong-doer may in some instances be liable for a probable consequence because it was foreseeable, even though it may not have occurred in the ordinary course of nature. This phrase, however, does furnish a reasonable guide for the solution of the vast majority of cases. It is not necessary that injury in the precise form suffered should have been forseen; it is only essential that, viewing the occurrence in retrospect, the consequences appear to flow in unbroken sequence from the negligence. *Marsh* v. *Great Northern Paper Co.*, supra, 502; *Palsgraph* v. *Long Island R. R. Co.*, 248 N. Y., 339, 344; *Dalton* v. *Great Atlantic & Pacific Tea Co.*, 241 Mass., 400.

It is sometimes said that the independent act of a third person intervening between the wrong complained of and the injury is sufficient to break the chain of causation. *Leavitt* v. *Bangor & Aroostook Railroad Co.*, 89 Me., 509, 520. In many instances this is true, but there are innumerable cases where it is not. Such rule undoubtedly had its genesis in the language of the court in the famous "squib case." *Scott* v. *Shepherd*, 2 W. Bl., 892, 1 Smith Leading Cases, 797. A lighted squib was thrown into a market house and fell on a stand of one proprietor, who instinctively threw it off, and it fell on the stand of another, who likewise threw it. It then struck the plaintiff, exploded, and put out his eye. The court held the one who first threw it responsible. The opinion suggests that the intervening acts were done under compulsion, instinctively, and that if a free agent had intervened, the result would have been different. Applied to the facts of the particular case, the language is of course correct, but a glance at the cases shows that it is not universally applicable.

In *O'Brien* v. *J. G. White and Co.*, 105 Me., 308, the plaintiff was employed as a lineman by a contractor, who was building a transmission line. Through the negligence of an employee of a power company, which had nothing to do with the construction work, a current of electricity was permitted to escape over the wire on which the plaintiff was working. The defendant was held liable for its negligence in failing to protect the plaintiff from the consequence of the intervening act of the third party.

In *Luedeke* v. *New York Central & H. R. R. Co.*, 149 N. Y. S., 525, a trespasser in a railroad yard opened the throttle of a locomotive left unattended on a side-track. It ran out on the main line, and collided with another locomotive operated by the plaintiff's intestate, who was killed. It was held a question for the jury whether the defendant should have taken precautions against the commission of such intervening wrongful act.

In *Lane* v. *Atlantic Works*, 107 Mass., 104, cited by our court with approval in a number of cases, the declaration alleged that the defendant left a truck loaded with iron on a street in Boston, that the iron on said truck was carelessly placed and rolled off injuring the plaintiff. The evidence showed that children were accustomed to play in the street. A boy twelve years old called to the plaintiff, who was a child of about seven, to come over and see him move the truck. The plaintiff did so, and the other boy moved the tongue sideways so that the truck tilted and the iron rolled off and injured the plaintiff. The trial court ordered a verdict for the defendant. This ruling was held erroneous, for the court said it was a question for the jury whether the occurrence was one which should have been reasonably apprehended. If so, the negligence of the older boy in moving the cart would not prevent a recovery, even though it contributed to the result. The case later came before the court again, 111 Mass., 136, on exceptions by the defendant after a verdict for the plaintiff. In sustaining the verdict the court said, 139-140: "The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrong-doer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated,

not in the number of subsequent events and agencies which might arise."

*Gay* v. *Essex Electric Street Railway Co.*, 159 Mass., 238, came before the court on an appeal from a ruling of the trial court sustaining a demurrer and ordering judgment for the defendant. The declaration alleged that the defendant left certain street cars standing on a public street in violation of a city ordinance with the brakes wound up. The plaintiff's intestate, while playing on these cars with other children, was injured by the unwinding of a brake. The court held that he was a trespasser and that no right of action accrued to him. We find, however, at page 241 this significant dictum: "If the cars had been set in motion by other children, and the plaintiff's intestate had been injured by them while lawfully upon the highway, the defendant clearly would have been liable."

In *Lynch* v. *Nurdin*, 4 Perry & Dav., 672, decided in the Queen's Bench in 1841, the following facts were brought out. The defendant's servant left his horse and cart in the street for about half an hour with no one to care for them. The plaintiff, a boy of seven, and several other children were playing about the cart. While he was getting down from it one of the other boys set the horse in motion, and the plaintiff was injured. The question was whether the servant's negligence in leaving the horse and cart was the proximate cause of the injury. The issue was left to the jury and on appeal this ruling was held correct. Lord Denman said, page 675: "If I am guilty of negligence in leaving any thing dangerous in a place where I know it to be extremely probable that some other person will unjustifiably set it in motion to the injury of a third, and if that injury should be so brought about, I presume that the sufferer might have redress by action against both or either of the two, but unquestionably against the first."

The question whether or not negligence is a proximate cause of an injury is answered, not as a rule by determining that the act of a third person contributing to the result does or does not intervene, but rather by deciding whether the occurrence should have been foreseen or reasonably anticipated. The rule is thus stated by Judge Smith in the article previously referred to. 25 Harv. L. Rev., 113. "By the decided weight of authority, A. would be liable if he foresaw, or ought to have foreseen, the commission of B.'s

tort, and the resultant damage, as a not unlikely consequence of his earlier tort."

In *Lake* v. *Milliken*, 62 Me., 240, we find the following statement, page 242: "The general rule is that a man is not answerable for the consequences of a fault, only so far as the same are natural and proximate, and as may on this account be foreseen by ordinary forecast."

In *O'Brien* v. *J. G. White and Co.*, supra, we find the following at page 314: "If the act of a third party concurs with the negligence of the defendant in causing the injury complained of, such concurring act does not relieve the defendant from liability if such act ought to have been foreseen or anticipated."

In *Chickering* v. *Lincoln County Power Co.*, 118 Me., 414, there was a demurrer to a declaration which alleged that the plaintiff's intestate was killed while climbing a tree by coming in contact with an improperly insulated electric wire of the defendant. In sustaining a decision of the presiding Justice overruling the demurrer, this court said, page 418: "No one may with impunity totally disregard the natural habits and the childish inclinations of boys at play to climb the dooryard shade-trees."

In *Hawkins* v. *Maine & New Hampshire Theatres Co.*, 132 Me., 1, the question was whether a theatre management was negligent in not guarding against the wilful act of a twelve-year-old boy in shooting a sling shot in a crowded theatre. In holding the defendant not liable under such circumstances the rule was thus stated, page 4: "A recovery may be had, even though the wilful or negligent act of a third person intervenes and contributes to the injury, provided such act should have been foreseen."

In the case of *The Lusitania*, 251 Fed., 715, one question was whether the proximate cause of the sinking of the liner was the negligence of the Cunard Steamship Co., or the unlawful act of a German submarine. The court absolved the company on this issue, on the ground that an act so brutal and so contrary to the law of nations could not have been anticipated.

Chief Judge Cardozo in *Palsgraf* v. *Long Island R. R. Co,*. supra, at page 345, most aptly refers to this aspect of the doctrine of proximate cause as "the range of reasonable apprehension."

See to the same effect as the above cases, *Fairbanks* v. *Kerr*,

supra; *Isham* v. *Dow's Estate,* 70 Vt., 588; Shearman & Redfield, Negligence, 4 ed., Sec. 34.

That the facts in the case before us are undisputed does not raise an issue of law provided reasonable men may reach different conclusions from them. *Nugent* v. *Boston, Concord & Montreal Railroad,* 80 Me., 62; *Brown* v. *Rhoades,* 126 Me., 186. The determination of the issue of proximate cause requires the drawing of inferences sometimes from disputed and often from uncontroverted facts, and is peculiarly the province of the jury. *Milwaukee & St. Paul R'y Co.,* 94 U. S., 469, 24 Law Ed., 256; *Lashley* v. *Dawson,* 162 Md., 549, 160 A., 738; *Lynch* v. *Nurdin,* supra.

In applying these rather well-known principles to cases similar to that now before us, the overwhelming weight of authority seems to hold that the question raised is one of fact and not of law.

In the case of *Jackson* v. *Mills-Fox Baking Co.,* 221 Mich., 64, 26 A. L. R., 906, the facts are in some respects similar to those before us. An electric truck left in front of a house was started by children, and the plaintiff was injured. The court reversed a judgment for the plaintiff. The determining factor in the mind of the court was that the driver of the truck did not go out of sight of it. Had he done so and remained away knowing that children were in the vicinity, the court admits that the decision might have been different.

The New York courts have considered somewhat similar facts in *Berman* v. *Schultz,* 81 N. Y. S., 647; *Frashella* v. *Taylor,* 157 N. Y. S., 881; *Austin* v. *Buffalo Electric Vehicle Co.,* 158 N. Y. S., 148; *Lazarowitz* v. *Levy,* 185 N. Y. S., 359; *Pesaty* v. *Hearn,* 202 N. Y. S., 264; *Kaplan* v. *Shultz Bread Co.,* 208 N. Y. S., 118. In each of these cases it was held that there was no liability; but in each one there are certain important facts which distinguish it from the case, which we are considering here. In no one of them does it appear that the defendant left unattended on the street a truck of such construction and so placed that it could be readily started by children so young that they could not comprehend the mischief which they might cause. In any event two cases decided by the Court of Appeals appear to clarify the law in New York.

In *Maloney* v. *Kaplan,* 233 N. Y., 426, 26 A. L. R., 909, the following facts appear. The plaintiff's testator was killed by a truck

which was left on an incline with the emergency brake set, which was apparently released by boys. The court set aside a verdict for the plaintiff, not on the ground that the question was not properly a jury one, but for the refusal of the trial judge to instruct the jury that the defendant was not liable, if the truck driver took the precaution of setting the emergency brake, turning the wheels toward the curb and throwing off the switch. In this connection also the court made it clear that it was not a case where the danger was apparent of interference by little children indulging in their natural instincts of play.

In *Connell* v. *Berland,* 228 N. Y. S., 20, the facts are very similar to those now before us except that the automobile, being operated by gasoline, could not be so readily started as was the truck of this defendant. It was left unguarded for a longer period of time, to be sure, but it is hard to see why this fact is particularly material. The court in affirming a judgment for the plaintiff said, page 21 : "The jury were justified in finding from the evidence that the defendant was negligent, in that he parked his automobile in a congested locality where concededly he knew that children were constantly playing in the street, leaving the car, which was equipped with a self-starter, with the doors unlocked and with the ignition key in the switch." *Maloney* v. *Kaplan* is distinguished because in that case the situation was not presented of apparent danger of interference by little children. The decision in this case was affirmed by the Court of Appeals. *Connell* v. *Berland,* 248 N. Y., 641.

The opinion of *Rhad* v. *Duquesne Light Co.,* 255 Pa., 409, cited by counsel for the defendant, shows that the emergency brake of an automobile was released by a boy twelve years old. The facts bring it within the rule laid down in *Hawkins* v. *Maine & New Hampshire Theatres Co.,* supra. It is clearly distinguishable from the case at bar. The conduct of a boy of twelve is no measure of what should be expected from one of five.

In the case of *Campbell* v. *Model Steam Laundry,* 190 N. C., 649, we find facts almost identical with those before us. The defendant's electric truck was parked in violation of a municipal ordinance on the left side of the street, while the driver was delivering a package of laundry. From the direction in which the car

subsequently moved, the inference could be drawn that the wheels were not turned toward the curb. The evidence likewise showed that by reason of the car being parked with its left side toward the curb, the steering wheel and control lever could be reached by a child without entering the car. The switch plug or circuit breaker was not removed. As the driver went into the house he saw a four-year-old child coming out. This child climbed on the wheel, turned the control lever and the car started. A passer-by jumped on the truck and tried to stop it, but the child fell off and was killed. After judgment for the plaintiff the defendant appealed. It was held that there was no error, that the negligence of the driver in leaving the truck as he did was the proximate cause of the accident, and that the act of the child was not an intervening, efficient cause.

In the case before us it seems clear that the question of the defendant's negligence and whether it was a proximate cause of the accident were issues of fact to be decided in this instance by the presiding Justice.

This brings us to a consideration of the question of the plaintiff's due care. It would be a distinct reproach to the law to hold that one must act at his peril, who risks his own safety to protect those put in jeopardy by the negligence of a third person. The overwhelming weight of authority is that one attempting to rescue another under such circumstances is not, by exposing himself to imminent danger, to be held negligent unless his conduct is to be regarded as rash or reckless. *Eckert* v. *Long Island Railroad Co.*, 43 N. Y., 502; *Bond* v. *Baltimore & Ohio Railroad Co.*, 82 W. Va., 557; *Seaboard Air Line R'y Co.* v. *Johnson*, 217 Ala., 251; *Christiansen* v. *Los Angeles & S. L. R. Co.*, 77 Utah, 85; *Lashley* v. *Dawson*, supra; Shearman & Redfield, Negligence, 4 ed., sec. 85. Likewise the contributory negligence of the person injured does not preclude recovery by the person attempting the rescue. *Bond* v. *Baltimore & Ohio Railroad Co.*, supra. Furthermore the law is indulgent to the rescuer, if in the emergency he fails to use the same judgment and adopt the same measures for his protection, that he might if the opportunity were given him for calm deliberation, *Lashley* v. *Dawson*, supra.

Defendant's counsel both in written and oral argument has conceded that there was no negligence on the part of the plaintiff. As

this precise question, however, has not heretofore been before this court, we have felt it advisable to express our opinion on it.

*Exceptions overruled.*